THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* THE
KNICKERBOCKER ICE COMPANY, Appellant.

A corporation organized under the act of 1855 (Chap. 301, Laws of 1855),
extending the operation of the General Manufacturing Act (Chap. 40,
Laws of 1848), by authorizing the formation of corporations " for the pur-
pose of collecting, storing and preserving ice, of preparing it for market,
of transporting it  *  *  *  , and of vending the same," and whose busi-
ness is confined to the purposes expressed in the act, is not a manufactur-
ing corporation, and so is not within the provision of the act providing for
the taxation of certain corporations (§ 3, chap. 542, Laws of 1880, as
amended by chap. 361, Laws of 1881), which exempts manufacturing cor-
porations from the operation of the act, and such corporations are taxa-
ble under said act.

The provision of the said act of 1855 (§ 2), giving to the corporations organ-
ized under it, the privileges conferred by the act of 1848 was not intended
to put them, in all respects, upon the same footing as manufacturing cor-
porations, and does not exempt them from taxation. The exemption is
limited to corporations which are in fact manufacturing corporations, and
carry on manufacture.

(Argued April 22, 1885; decided May 8, 1885.

APPEAL from judgment of the General Term of the Supreme
Court, in the third judicial department, entered upon an order
made the first Tuesday of May, 1884, which affirmed a judg-
ment in favor of plaintiff, entered upon the report of a referee.
(Reported below, 32 Hun, 475.)

The nature of the action and the material facts are stated in
the opinion.

*Matthew Hale* for appellant.   The words " manufacturing
corporation " are to be interpreted in their usual and ordinary
sense, and as relating to all companies, under whatever law in-
corporated and by whatever general name, whose chief and
principal business is the manufacture and sale of artificial pro-
ducts.   (*Nassau G. L. Co.* v. *City of Brooklyn*, 25 Hun, 567 ;
89 N. Y. 409.)   The defendant is a manufacturing corpora-
tion.   The word " manufacture " literally signifies " made by
hand." (Webster ; Bouvier ; *Holden* v. *Clanay*, 58 Barb. 590.)

A chemical change, or change of substance, is not necessary in order to constitute a "manufacture." (*Tone* v. *Dollger*, 6 Robt. 251; *Schriefer* v. *Wood*, 5 Blatch. 215; *New Orleans* v. *LeBlanc*, 34 La. Ann. 596; 28 Alb. L. J. 366; *Bailey* v. *Schell*, 5 Blatchf. 195; *Lawrence* v. *Allen*, 7 How. [U. S.] 785; *Palmer's S. B. Co.* v. *Chaylor*, L. R., 4 Q. B. 209.) The claim of the defendant is in accordance with public policy and the declared policy of the legislature. (Walker's Science of Wealth, quoted in Cooley on Taxation, 396, note.)

*D. O'Brien*, attorney-general, for respondent. The defendant is not a manufacturing corporation. (Webster; *Nassau G. L. Co.* v. *Brooklyn*, 89 N. Y. 410; *People* v. *N. Y. F. D. D. Co.*, 92 id. 487; *Schreifer* v. *Wood*, 5 Blatchf. 217.) The term "manufacture" presupposes, first, a raw material; second, an application thereto of labor, skill and manipulation; third, the production of a new distinct object, due solely to the application of the labor and skill of man to the raw material. (*Byers* v. *Franklin Coal Co.*, 106 Mass. 131; *Dudley* v. *Jamaica P. Aqueduct*, 100 id. 183; *Frazee* v. *Moffit*, 20 Blatchf. 267.) The legislature has given construction to the words "manufacturing corporation" opposed to defendant's theory. (Chap. 40, Laws of 1848; chap. 301, Laws of 1855, p. 516; *People* v. *N. Y. F. D. D. Co.*, 92 N. Y. 487.)

DANFORTH, J. This action was brought to recover State taxes for the year ending November 1, 1882, under the provisions of chapter 542, Laws of 1880, section 3, as amended (Laws of 1881, chap. 361), and also for the penalty prescribed (Laws of 1881, *supra*, § 2), for their non-payment. The answer, in substance, avers that the defendant "is a manufacturing corporation, carrying on manufacture within this State," and, therefore, exempt from such imposition by the very terms of the statute (*supra*). Upon trial of the issue before a referee, it appeared that the defendant was a corporation organized under the Manufacturing Act of this State (Laws of 1848, chap. 40); and in pursuance of an act passed April 12, 1855 (Laws

of 1855, chap. 301), to extend the operation of said act of 1848; that its business was "collecting ice from the Hudson river and Rockland lake, storing, preserving and preparing it for sale, transporting it to the city of New York or elsewhere and vending the same," and the referee found that the defendant was not a manufacturing corporation carrying on manufacture. If this finding is correct, judgment properly followed the prayer of the complaint.

The business of the defendant is described in language found in its articles of association, and for the doing of which it was organized. The performance, therefore, corresponds with its license, and while the phrase by which the incorporation was effected might not be important, we cannot fail to see that neither it nor its operations are in any way concerned with the manufacture or sale of an artificial product. Its dealing is with "ice," as an existing article, not the manufacture or production of ice by combination of materials, or the application of forces, or otherwise. It collects, stores and preserves that which natural causes created and which other natural causes would destroy and waste. It seeks only to hold these last in check. Similar operations would equally apply to water, fruit, sand, gravel, coal and other natural productions. Water might be improved by filtration, fruit by judicious pruning of the tree or vine, or protection by glass, sand and gravel by screening, cobble-stones by selection, and coal by breaking, and each, by various processes, stored until the season of demand, when, having been "collected, stored, preserved and prepared for sale," the natural articles and no other would be put upon the market.

No doubt ice may be manufactured and frigoric effects produced by artificial means. Corporations exist for that purpose and come literally within our manufacturing laws. Their methods in no respect resemble those of the defendant. Its tools and implements are for convenience in handling and marketing a product, and not at all for making it. Many cases are cited by the learned counsel for the appellant, but we find none so comprehensive as to include this case. They all, so far

as they have any application, require the production of some article, thing, or object by skill or labor out of raw material, or from matter which has already been subjected to artificial forces, or to which something has been added to change its natural condition. Whether, therefore, the words of exemption in the act of 1881 (*supra*) are taken in their usual and ordinary sense, or according to their legal interpretation (*Gas-light Co.* v. *Brooklyn*, 89 N. Y. 409), they do not include the defendant. The statute (Laws of 1855, *supra*), under which the existence of the defendant was made possible, seems to require the same conclusion. By it the Manufacturing Act of 1848 (*supra*) was extended so as to permit the formation of such a company. It became a law on the 12th of April, 1855, and on the 19th day of the same month the defendant was organized, and its object, as above described, follows literally the language of the act. We have, therefore, both a practical and a legislative interpretation of the earlier act — that of 1848. The defendant did not rely upon it in describing the purpose for which the company was to be formed, and it cannot be assumed that the later act would have been passed if, in the opinion of the legislature, it did not provide for a new subject. No doubt it is the province of the court to declare what the law is, but where there are two statutes relating to the same general purpose, they are both to be considered and each construed in the light of the other. Here the act of 1855 may be regarded as a legislative declaration that the object to which it was directed was not included in the act of 1848. It is, however, provided, that a corporation organized under the act of 1855 (*supra*, § 2), shall be entitled to the privileges conferred by the act of 1848 (*supra*), and hence the learned counsel for the appellant argues that a legislative intent may be implied to put it on the same footing in all respects as a manufacturing corporation. This does not follow. Equality under that act is provided for, but nothing more. Exemption from taxation is not given by it. That subject is regulated by the statute under which this action was brought (Laws of 1881, *supra*), and it is limited to corporations which are in fact manu-

facturing corporations and do carry on manufacture. We think the defendant is of a different character.

The judgment appealed from should, therefore, be affirmed. All concur.

Judgment affirmed.