## FURBER v. STEPHENS.

*(Circuit Court, E. D. Missouri, E. D May 5, 1888.)*

BANKS AND BANKING—DEPOSITS—INSOLVENCY—REPLEVIN.
    Where plaintiff deposits money with the receiving teller of a bank, a few minutes before the bank closes its doors, to be credited to his account, and the teller, not knowing of the coming failure, after crediting the money in plaintiff's pass-book, puts the money and deposit ticket one side, and before entry is made in the books of the bank, it closes its doors, and the money is, by order of the directors, placed apart, and in that condition delivered to the receiver, plaintiff can maintain replevin for the money so deposited.

At Law. Action of replevin.
John G. Furber, plaintiff, sued L. V. Stephens, receiver. The facts appear in the opinion.
*Robert W. Goode*, for plaintiff.
*Shackelford & Williams*, for defendant.

THAYER, J., (*orally.*) This case has been submitted on an agreed statement of facts. From the statement it appears that plaintiff had been a customer of the Fifth National Bank for some time before its failure on November 7, 1887. Only a few moments before the bank closed its doors, he delivered $762.50 in current funds over the counter to the re-
        v.35F.no.1—2

ceiving teller, to be credited to his account in the usual course of business. The deposit was entered in the plaintiff's pass-book, and the book was returned to him; but the teller laid the money aside, together with the deposit ticket, according to his custom when he was busy, so that the money did not become mingled with the funds of the bank. Before any entry was made to plaintiff's credit on the books, the bank closed its doors, and, by direction of the bank officers, the plaintiff's deposit was kept separate from other moneys, and in that shape passed into the custody of the receiver. It is conceded that, when the deposit was made, neither the plaintiff nor the receiving teller knew that the bank was about to suspend.

On the agreed case, there is only one ground upon which the plaintiff can recover, and that is, that the reception of the money under the circumstances stated was such a fraud on the part of the bank as entitles the depositor to reclaim the money in an action of replevin. Whilst it is the rule that a deposit made with a bank of current funds creates the relation of debtor and creditor as soon as the funds pass into the custody of the bank, and even before any entry has been made in the books of the bank, as distinguished from the depositor's pass-books, yet there are several well-considered cases that hold that if a bank receives money from a depositor on the eve of suspension, knowing that it is insolvent, and about to suspend, such conduct is fraudulent, and entitles the depositor to reclaim the deposit if the particular money can be identified, and has not become mingled with the funds of the bank. I refer to the following cases: *Cragie* v. *Hadley*, 99 N. Y. 131, 1 N. E. Rep. 537; *Sadler* v. *Belcher*, 2 Moody & R. 489; *Chaffee* v. *Fort*, 2 Lans. 86. Counsel for the receiver lay stress on the fact that the receiving teller did not know that the bank was about to suspend when he received the deposit, but I regard that fact as immaterial, if the officers of the bank knew that it was about to suspend business. The teller was merely a subordinate agent of the bank, and the corporation cannot shelter itself behind his ignorance, if the managing officers of the corporation were acquainted with its condition when the deposit was made. Inasmuch as the agreed statement admits that the bank was insolvent, and that it closed its doors only a few moments after the money was received, it must be taken as a conceded fact that the directors or managing officers did know that the concern was insolvent, and was about to suspend operations, when the deposit was made. The subsequent action of the officers of the bank in directing the receiving teller to keep the deposit separate, so that it could be identified, is an admission of such knowledge on their part, and likewise an admission that the depositor had the right at his election, to reclaim the money. The receipt of the money from the depositor under such circumstances, especially if the bank officials had made an effort to hold the money, and treat the depositor as an ordinary creditor, would have operated as a fraud on the depositor, and would entitle him to reclaim the money deposited, if susceptible of identification. There is no possible distinction in principle between receiving money on the eve of suspension, knowing that a suspension is about to take place, and the

purchase of property by an insolvent person with a preconceived intent of not paying for it. In both cases the depositor and the vendor may reclaim that with which they have parted, if it can be identified in the one case, and has not passed to an innocent purchaser for value in the other.

As this is an action of replevin, the judgment will be that the plaintiff is entitled to the possession of the money deposited, and the damages for the detention will be assessed at one cent.