PEOPLE v. VOORHIS.

1. INTOXICATING LIQUORS—TAXATION—MANUFACTURERS—DISCRIM-
   INATION—INTERSTATE COMMERCE.

   2 Comp. Laws, § 5379, imposing an annual tax of $500 on the
   business of selling brewed or malt liquors at wholesale, but
   providing that no person paying a manufacturer's tax of $65
   a year on such liquors shall be liable to pay a wholesaler's tax
   thereon, does not so discriminate against a nonresident man-
   ufacturer maintaining a selling depot in this State as to ren-
   der the law repugnant ,to the interstate commerce clause of
   the Federal Constitution.

2. SAME—WHOLESALERS.

   A manufacturer of brewed or malt liquors in another State can-
   not sell his product at wholesale from a warehouse in this
   State without paying a wholesale dealer's tax. 26 U. S. Stat.
   313.

3. SAME.

   Any manufacturer of brewed or malt liquors, who establishes a
   warehouse for the sale of his liquors at any other place than
   his brewery, must pay the wholesaler's tax provided by 2
   Comp. Laws, § 5379.

4. SAME—SALES AT BREWERY.

   The right to manufacture liquors necessarily implies the right
   to sell the same at the manufactory; and the provision of the
   statute that "no person paying a manufacturer's tax on
   brewed or malt liquors shall be liable to pay a wholesale
   dealer's tax on the same" neither enlarges nor restricts his
   right to sell his product.

Exceptions before judgment from Delta; Stone, J.
Submitted May 8, 1902. (Docket No. 155.) Decided
September 17, 1902.

Clayton Voorhis was convicted of violating the liquor
law. Affirmed.

Respondent was convicted of the offense of selling and
offering for sale brewed and fermented liquors at whole-

sale without having paid the tax as required by sections 5379, 5380, 2 Comp. Laws, which read as follows:

"That in all townships, cities, and villages of this State there shall be paid annually the following tax upon the business of manufacturing, selling, or keeping for sale by all persons whose business, in whole or in part, consists in selling or keeping for sale, or manufacturing, distilled or brewed or malt liquors, or mixed liquors, as follows: * * * Upon the business of selling only brewed or malt liquors at wholesale or retail, or at wholesale and retail, five hundred dollars per annum; * * * upon the business of manufacturing brewed or malt liquors for sale, sixty-five dollars per annum. * * * No person paying a manufacturer's tax on brewed or malt liquors under this act shall be liable to pay a wholesale dealer's tax on the same.

"Wholesale dealers shall be held and deemed to mean and include all persons who sell or offer for sale such liquors and beverages in quantities of more than three gallons, or more than one dozen quart bottles, at any one time to any person or persons."

The case was tried before the court without a jury, under the following stipulated facts:

"That the Minneapolis Brewing Company is a corporation organized and existing under the laws of the State of Minnesota, with its home office and principal business situated at the city of Minneapolis, Minn.; that the business of the said Minneapolis Brewing Company is that of brewing beer and selling and offering the same for sale at wholesale, and as a part of its said business sales were made in the State of Michigan; that, at the time and before the complaint was made in this cause against the said defendant, the said Minneapolis Brewing Company had a cold-storage building situated at the city of Gladstone, in said county of Delta, which was used for the purpose of storing beer therein belonging to the said brewing company, and that at that time there was a large amount of beer stored therein; that the said defendant, Clayton Voorhis, was under the employ of the said brewing company, upon a salary, and received the sum of $100 per month for his services while working for said brewing company; that it was the duty of the said Clayton Voorhis to unload all the beer from the cars as it arrived at the city of Glad-

stone, and to store the same in the said cold-storage building, and to deliver the said beer from the said cold-storage building to several and different saloon keepers in the city of Gladstone, from day to day, as it was required by said retail dealers in their regular course of business, to collect the pay for the same, to collect all bottles and kegs, and reship them to the said brewing company at Minneapolis, Minn., and to do any other work or business required by the said Minneapolis Brewing Company to complete all sales to retail dealers.

"And it is further stipulated and agreed that the said Clayton Voorhis has no title or interest in and to said beer, or the business of selling or delivering said beer to the said retail dealers, and was not in any way interested in said business, except by working for said brewing company upon a stated salary; that, under the terms of said employment with the said brewing company, the said Clayton Voorhis did receive kegs and bottles of beer upon the cars, and place the same in the cold-storage building as aforesaid, and deliver said beer from time to time, as stated in the complaint in said cause, to the retail dealers in the said city of Gladstone, and received and collected the pay therefor, and remitted the same to the said Minneapolis Brewing Company; and that neither the said Minneapolis Brewing Company nor the said Clayton Voorhis ever has paid any tax in the State of Michigan, as provided by section 1 of Act No. 313 of the Public Acts of 1887, and never has received nor applied for any license as provided by said section.

"It is further expressly understood and agreed by and between said parties that this stipulation shall be used in said cause upon the trial thereof as evidence against the said Clayton Voorhis, and that the facts herein stated are admitted to be true by said Clayton Voorhis, he, the said Voorhis, denying that any license is required to be taken out by him by the terms of said statute."

*G. R. Empson* (*Cobb & Wheelwright*, of counsel), for appellant.

*Horace M. Oren*, Attorney General, and *John Cummiskey*, Prosecuting Attorney (*Roger Irving Wykes* and *Judd Yelland*, of counsel), for the people.

GRANT, J. (*after stating the facts*). Counsel for respondent state their contention thus:

" The requirement of the statute, when taken in connection with other provisions of the same act, prescribes a *discriminating* tax operating to the disadvantage of like products of other States when introduced into Michigan, and is therefore in effect a regulation in restraint of commerce among the States, 'and as such is a usurpation of the power conferred by the Constitution upon the Congress of the United States.' It is to be observed that, while by the provisions of section 5379 wholesalers of malt liquors are required to pay an annual tax of $500 in each place where they operate a warehouse or depository, manufacturers of malt liquors, on the other hand, are only required to pay a tax of $65 per annum, and are not required to pay any wholesaler's license whatever; so that, while the importer of malt liquors into the State of Michigan must pay a wholesaler's license of $500 in each place where he operates a warehouse or depository for the storage of his product in original packages, the local manufacturer, although operating a warehouse or depository in the same place where the importer operates and maintains his, is not compelled to pay any wholesaler's license whatever. A burden, therefore, is placed upon the foreign product not borne or sustained by the home producer, and consequently the former cannot compete in the local market with the latter. The discrimination, therefore, in favor of the product of the home brewer is clear; and is just as clear as it would have been if the legislature had declared in express terms that beer not produced or brewed in Michigan, but transported into that State from other States for sale there at wholesale, should be subject to the payment of a tax not imposed upon a similar product brewed or produced at home. This discrimination being clear, no conclusion can be reached except that the statute authorizing and directing the same is repugnant to the interstate commerce clause of the Federal Constitution."

If the premises assumed by the learned counsel are true, their conclusion inevitably follows; for the statute would then prescribe a discriminating. tax, which has been held by many decisions of the Supreme Court of the United States to be void. The defect in the argument of counsel lies in the falsity of their premises. No manufacturer of brewed or malt liquors can establish a warehouse or depot or place of sale at any other place than that of his brewery,

131 Mich.—26.

and avoid the payment of the tax as a wholesaler. *People* v. *De Groot*, 111 Mich. 245 (69 N. W. 248). That case is conclusive upon this point. Certainly the same rule must apply to manufacturers from outside the State as applies to manufacturers within the State.

The right to manufacture necessarily implies the right to sell the manufactured product at the manufactory. One who thus sells the liquors mentioned in the statute, manufactured by him, is not a "wholesaler" of liquors, within the popular or legal definition of that word. The provision that "no person paying a manufacturer's tax on brewed or malt liquors under this act shall be liable to pay a wholesale dealer's tax on the same" neither enlarges nor restricts the right of the manufacturer to sell his product. The statute, without this language, would give him the same right of sale that he has with it, viz., the right to sell his product at his brewery. The manufacturer is entitled to keep his goods in store at the place of manufacture for the purposes of sale when receiving orders, and in so doing is not a "wholesaler," within the popular or legal definition of that word. "Articles which the consumer recognizes as single the retailer keeps wrapped up in dozens, the *wholesaler* sends the gross, and the manufacturer supplies in packages of a hundred gross." 8 Cent. Dict. Enc., under definition of the word "wholesaler."

It is manifest from an examination of the various provisions of this act that the legislature intended to limit the right to manufacture or sell at wholesale or retail in but one place without the payment of an additional tax. Before either can do business in any place in any county, he must file with the county treasurer a statement in writing and on oath, giving his name and residence, and the ward, village, or township in which he proposes to carry on the business, whether to manufacture, to sell at retail, or wholesale. One cannot carry on two saloons in the same municipality without the payment of two taxes. A manufacturer cannot maintain two separate breweries in the same municipality without paying two·taxes.

There is no discrimination in this case between the home and foreign manufacturer. Either can freely sell his products upon orders received at his place of manufacture, both within and without the State, and each is subject only, in such manufacture and sale, to the regulations imposed by the law of the State where his manufactory is located. This law places both the home and the foreign manufacturer upon the same basis by providing that when each establishes a warehouse in which he deposits his products for sale, and there establishes an agent to carry on the business of selling, he becomes a wholesaler, and is subject to the laws of the State where he assumes to carry on such business. Such, in fact, is the provision of the act of Congress passed after the case of *Lyng* v. *Michigan*, 135 U. S. 161 (10 Sup. Ct. 725), was decided. That act was approved August 8, 1890. It is entitled, "An act to limit the effect of the regulations of commerce between the several States and with foreign countries in certain cases." It provides that "all fermented, distilled, or other intoxicating liquors or liquids transported into any State or Territory, or remaining therein, for use, consumption, sale, or storage therein, shall, upon arrival in such State or Territory, be subject to the operation and effect of the laws of such State or Territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise." 26 Stat. 313.

Under the stipulated facts, the Minneapolis Brewing Company placed the respondent in charge of selling its product at Gladstone, in the State of Michigan, and sent its product to him for sale. Under the above act the business then came within the control of the people of this State. We think that this question is fully settled against the contention of the respondent by *Reymann Brewing Co.* v. *Brister*, 179 U. S. 445 (21 Sup. Ct. 201). It is there stated (at page 456):

"If they [brewing companies] establish places within the State, distinct from the manufactory, where their goods are to be stored, for the purposes of sale and delivery, and such goods are there sold and delivered, then they become traffickers, within the meaning of the law, and are liable to pay the tax."

The law involved in that case is substantially the same as the one now before us for construction, and the facts are almost identical with those in this case.

It follows that the conviction must be affirmed, and the court below instructed to proceed to sentence.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., concurred.