# CHARLESTON.

STATE *v.* SCHMULBACH BREWING COMPANY.

Submitted June 17, 1904—Decided November 29, 1904.

1.  BREWERY.—*License.*
    A brewery which has paid the license tax required by sections 54 and 55, chapter 32, of the Code, must have a license under section 62 of said chapter to entitle it to sell its product at wholesale.   (pp. 334, 335).

Error to Circuit Court, Wood County

The Schmulbach Brewing Company was convicted of selling beer without a license, and brings error.

*Affirmed.*

JOHN A. HOWARD, for plaintiff in error.

The ATTORNEY GENERAL and H. H. Moss, JR., for defendant in error.

MCWHORTER, JUDGE:

The Schmulbach Brewing Company, a corporation doing business in the city of Wheeling, Ohio county, having paid a manufacturer's license as a brewer under sections 54 and 55 of chapter 32 of the Code, was indicted in the criminal court of Wood county for selling without a license therefor. When the case was called for trial, the facts were agreed as follows: "The defendant, The Schmulbach Brewing Company, is a corporation duly organized, existing and doing business under the laws of the State of West Virginia and is engaged in carrying on the business of a brewer of beer. Its brewery is situated in the City of Wheeling, in the County of Ohio, State of West Virginia and that it sells the beer it manufactures generally throughout the State of West Virginia and elsewhere; and that it pays the license required by sections 54 and 55 of chapter 32 of the Code, and had such license during the period covered by the indictment in this case. It is further agreed that on the date charged in the indictment the defendant, in the county of Wood, State of West Virginia, sold beer in wholesale quantities to L. L. Moore and J. W. Hoffman, partners under the firm name and style of

Hoffman & Moore, in saloon business; and that at the time it made such sale it had no other license than that hereinbefore mentioned, that is to say, it, the defendant, did not have the license of a wholesale dealer nor of a retail dealer in intoxicating liquors at the time of the sales charged in the indictment, in the County of Wood and State of West Virginia, but did have the license of a manufacturer of beer in the County of Ohio, State of West Virginia, where its brewery is situated, and where the beer sold in the County of Wood to the said L. L. Moore and J. W. Hoffman was manufactured. It is agreed by the defendant, The Schmulbach Brewing Company, and by the State that the above is a full and true statement of facts in this case, and the defendant waives its right to a trial by jury and submits this case to the Court in lieu of a jury." On the 30th of January, 1902, the case being submitted upon the agreed facts, the court was of opinion that the defendant was guilty as charged in the indictment; assessed its fine at $20, and entered judgment therefor; the circuit court refused a writ of error. There is no brief filed by the prosecuting attorney of the county nor by the attorney general on behalf of the state. It is insisted by counsel for the defendant that the defendant's license to manufacture carries with it the right to sell its manufactured products, and that the real question involved is the construction or interpretation of chapter 40 of Acts of 1899, which act amended section 54 of chapter 32 of the Code by inserting therein the words "Shall be co-extensive with the state," which made the section read as amended "A license to carry on a distillery for the manufacture of whisky or brandy, or a brewery for the manufacture of beer or ale, shall be co-extensive with the State, and shall be regulated, and the amount fixed by the following classification," assuming that the license to manufacture necessarily carried with it the license to sell at wholesale, the product of the brewery, and the case is argued by counsel for the defendant Company upon that theory alone. In my view of the case the question whether a license to brew is co-extensive with the State, is not here involved at all. The sole question for decision is whether a brewing company paying a license tax as a manufacturer can sell its manufactured beer at wholesale without having a wholesale license therefor. Sec. 62 of the same chapter provides there shall be paid "On every license to sell spiritous liquors, wine, porter, ale,

beer and drinks of like nature at wholesale, $350 in addition to all other taxes." There is no exception made in favor of any class of sellers by the statute, and all who deal in such liquors, whether they sell by wholesale or retail, are required to obtain a license and pay the tax imposed. Section 62 provides that the $350 wholesale tax is "In addition to all other taxes." The tax is charged and paid for the privilege of selling, and from the section quoted it seems clear that no person shall be permitted to sell without first having obtained a license therefor, but if a shadow of doubt should remain, on this point, section 65 of the same chapter dispels it and makes clear the intention of the law makers. This section provides that "Apple and peach brandy distilled within any of the counties of this State from fruit grown in the State, may be sold by the distiller thereof in quantities not less than five gollons at a time, to be carried away and not drank on the premises where sold, by paying a license tax of one hundred dollars." This shows, beyond all question, that the legislature intended distillers and brewers to pay a tax for selling. The statute requiring manufacturer's license is without exception. It applies to all brewers and distillers alike. Section 65 favors distillers of fruit, by requiring a less license tax to sell, perhaps because of the limited quantity of material to be used in that way, as well as the limited season for operating. If brewers, who by paying a manufacturer's license only, are permitted to sell under such license at wholesale, by what rule can they be prevented from selling at retail their manufactured products under the same license? It may be answered that under section 65, only one class of distillers is required to have a license to sell at wholesale the product of their distilleries, all others being free to sell at wholesale under their manufacturer's license. This is not a reasonable construction of the law; without section 65 all distillers would have to pay the wholesale license required by section 62. Clearly the intention was to relieve the smaller distillers of apple and peach brandy to the extent of the difference between the license required under section 62 and that required under section 65, and not to discriminate against them. Black on Intoxicating·Liquors, sec. 23, is cited by counsel for defendant, to show what constitutes a wholesale liquor dealer, and also *Taylor* v. *Vincent,* 12 Lea (Tenn.) 282, (47 Am. Rep. 338), where it is held: "A manufacturer of liquors, selling in unbroken packages

at his place of business, is not a wholesale liquor dealer liable to taxation as other merchants." However, on the other hand I find in *Webb* v. *State*, 11 Lea (Tenn.) 662, it is held: "Manufacturers of whisky and brandy, out of products of farms and orchards in the State, who sell by wholesale, are liable for the privilege tax imposed upon wholesale dealers." But why continue the examination of authorities when the statute itself is too plain to be misunderstood? The wholesale license is a tax for the privilege of selling, and what the purpose of the legislature may have been in amending section 54 by providing that the license therein mentioned should "be co-extensive with the State" has nothing to do with the question in this case, as it applies only to the manufacture, and not to the selling. The judgment is affirmed.

*Affirmed.*