## UNITED STATES v. VALDEZ BREWING & BOTTLING CO.

(Third Division.   Valdez.   July 10, 1917.)

No. 601.

INTOXICATING LIQUORS ⬤⇒52—LICENSES—DIFFERENT KINDS OF BUSINESS.

> An information was filed by the United States against the defendant for engaging in the sale of liquor at wholesale without a license. The defendant is engaged in brewing beer and selling it to the trade at wholesale only. It has a license under section 2569, Comp. Laws Alaska 1913, as "breweries, five hundred dollars per annum," which amount it has paid, and for which the United States issued it a license under that authority. Defendant refuses to pay for and take out an additional license under section 2577, as a wholesale liquor dealer. *Held,* the section 2569 under which defendant pays the license as "breweries, five hundred dollars per annum," authorizes it to manufacture, brew, and dispose of its brewery product to the public in wholesale quantities. One who thus sells the brewery product thus manufactured is not a wholesale liquor dealer within the meaning of that phrase as it is used in section 2577, Comp. Laws Alaska 1913. Defendant found "not guilty."

An information was filed by the United States district attorney against the above-named defendant, the Valdez Brewing & Bottling Company, charging it with engaging in the sale of intoxicating liquors at wholesale without obtaining a license so to do.

W. N. Spence, U. S. Dist. Atty., of Valdez, for the United States.

Lyons & Ritchie, of Valdez, for defendant.

BROWN, District Judge.   The case was submitted to the court, the parties waiving a jury, upon an agreed statement of facts, which shows that the defendant is engaged in the business of brewing beer at Valdez, Alaska, and selling the same throughout the territory in wholesale quantities, and that on the 10th day of July, 1916, it sold beer in wholesale quantities to the Buffet saloon at Valdez, the owners thereof being engaged in the saloon business and that said defendant, the Valdez Brewing & Bottling Company, had no wholesale liquor license, but did have a license under section 2569, Compiled

680 . 5 ALASKA REPORTS

Laws of Alaska, under which they paid the sum of $500. Section 2569 provides:

"That any person or persons, corporation, or company prosecut- ing or attempting to prosecute any of the following lines of business within the district of Alaska shall first apply for and obtain license so to do from a district court or a subdivision thereof in said dis- trict, and pay for said license for the respective lines of business and trade as follows, to wit: * * * Breweries, five hundred dol- lars per annum."

Section 2577, Compiled Laws of Alaska, provides as fol- lows:

"That a wholesale license shall only authorize the licensee to sell distilled, malt, or fermented liquors, wines, and cordials in quanti- ties not less than four gallons, not to be drunk upon the premises where sold; and no such license shall be granted until it is satis- factorily shown that the place where it is intended to carry on such business is properly arranged for selling such liquor as merchandise."

It seems clear to me that the intent of the Legislature was to authorize the manufacture or brewing of beer and the sale of the product upon the payment of the annual license fee of $500. After paying so large a sum as $500, a license merely to brew the beer would be of no avail if the brewery had no power to sell it. It will be noticed that the wholesale liquor license authorizes the licensee to sell all kinds of spirituous, malt or fermented liquors, wine, etc., whereas the defendant here is merely manufacturing and selling beer.

Attention was called to the fact that this question had aris- en in Nome, in the Second judicial division of Alaska, and the United States district attorney of that division was of the opinion that a brewing company there was liable to pay the wholesale liquor license of $2,000 per year in addition to the $500 brewery license, but this opinion has not been produced, nor have the facts as they existed in the case of the Nome brewery been shown. It may be that the brewery there was en- gaged in the wholesale liquor business, as might easily be the case, and was acting as a dealer in the wholesaling of spiritu- ous liquors, beer, and wine by purchase from other portions of the United States and the sale thereof in the territory of Alaska.

The district attorney has cited one case upon which he relies as sustaining the contention that the defendant here should pay the $2,000 wholesale license; that is, the case of State v.

Schmulbach Brewing Co., 56 W. Va. 335, 49 S. E. 250.   In that case the statute was quite different from ours.   I quote from the opinion:

"Section 62 provides that the $350 wholesale tax is 'in addition to all other taxes.' The tax is charged and paid for the privilege of selling, and from the section quoted it seems clear that no person shall be permitted to sell without first having obtained a license therefor; but, if a shadow of doubt should remain on this point, section 65 of the same chapter dispels it, and makes clear the intention of the law makers. This section provides that 'apple and peach brandy, distilled within any of the counties of this state from fruit grown in the state, may be sold by the distiller thereof in quantities not less than five gallons at a time, to be carried away and not drunk on the premises where sold, by paying a license tax of one hundred dollars.' "

In the case of Egan v. State (Tex. Cr. R.) 68 S. W. 273, the court says:

"The facts show that appellant was the manager of the Waco Ice & Refrigerating Company, a corporation duly incorporated under the laws of the state, and that this corporation was engaged in the manufacture of ice at the rate of 100 tons per day, which was sold at wholesale and retail in McLennan county. The corporation had not paid the tax mentioned for the year 1901. Waco is a city of more than 20,000 inhabitants. It is also shown that the commissioners' court of the county had levied an occupation tax of $25. Appellant had not paid the tax, because he believed said ice company was a manufacturer of ice, and that the sale of its manufactured product did not bring it within the purview of the statute; in other words, that it was not a dealer. The statute imposes a tax only upon dealers in ice; the contention being that the Waco Ice & Refrigerating Company is a manufacturer of ice, and sells nothing but its own product. If the ice company is not a dealer within the purview of the statute, then this conviction is wrong, and defendant was not liable to pay the tax. Mr. Bouvier, in his Law Dictionary, says: 'A dealer, in the common acceptation, and therefore in the legal meaning, of the word, is not one who buys to keep, or makes to sell, but one who buys to sell again.' Our Legislature did not undertake to define the term 'dealer'; therefore we are relegated to our statute, which says that, 'Where words and terms are used without being specially defined, they shall be taken in their ordinary acceptation'; in other words, in the meaning commonly understood; and this is in accordance with Mr. Bouvier. The Waco Ice & Refrigerating Company was a manufacturer of ice, and sold its product in wholesale and retail quantities. This seems to have comprehended the entire scope of its business. We do not believe, under subdivision 52 of article 5049, under which this indictment was brought, that appellant was liable as a dealer. A kindred or analogous question was before the Supreme Court of Tennessee in Taylor v. Vincent, 12 Lea, 282, 47

Am. Rep. 338. The court held: 'We have carefully considered the question, and our conclusion is that a manufacturer, who sells articles manufactured by him, the articles being the product of the growth of the state, is not a dealer in such articles.' And to the same effect is Norris v. Com., 27 Pa. 495. There we find this language: 'Plaintiffs in error are not dealers. A dealer, in the popular, and therefore in the statutory, sense of the word, is not one who buys to keep, or makes to sell, but one who buys to sell again. He stands intermediately between the producer and the consumer, and depends for his profit, not upon the labor he bestows upon his commodities, but upon the skill and foresight with which he watches the markets. A man who makes locomotives is a mechanic.' In State v. Yearby, 82 N. C. 561, 33 Am. Rep. 694, the supreme court of that state held that one who buys cattle, sheep, and hogs, and sells meat, is not a dealer in meat, and not liable to the tax. In State v. Chadbourn, 80 N. C. 479, 30 Am. Rep. 94, defendants were proprietors of a steam sawmill, bought timber, cut it up, and sold it as lumber. They were held not liable to a tax on dealers. In People v. Knickerbocker Ice Co., 99 N. Y. 181, 1 N. E. 669, the court held that a corporation which makes ice by artificial means was a manufacturer. Our Legislature seems to have understood the difference between manufacturers and dealers, for in the forty-fourth subdivision of article 5049 they imposed a tax upon gas companies manufacturing gas in cities and towns of this state. In regard to gas the term 'manufacturing' is used; whereas, with reference to the sale of ice, they apply the tax to 'dealers,' and not to 'manufacturers.' In order to hold a citizen liable for a violation of the law, or subject him to criminal punishment, the case must be plainly and unmistakably within the statute; and if there be a doubt whether the statute embraces it, that doubt is to be resolved in favor of the accused. As stated in Murray's Case, 21 Tex. App. 620, 2 S. W. 757, 57 Am. Rep. 623, 'these principles of law admit of no dispute, and have been often declared by the highest courts, and by no tribunal more clearly than the Supreme Court of the United States.' Therefore, if the Legislature had intended to tax manufacturers of ice, they should have been explicit in using appropriate language or terms. This court will not by construction include persons under the criminal statute unless the plain import of the terms of the statute includes them. In order to hold appellant guilty under the law under which he was indicted, it would be necessary for this court to include him by a strained construction. We do not believe that appellant, under the facts and under the law, is guilty of a violation of the revenue or tax laws of the state."

In the case of People v. Voorhis, 131 Mich. 398, 91 N. W. 624, the court says:

"The right to manufacture necessarily implies the right to sell the manufactured product at the manufactory. One who thus sells the liquors mentioned in the statute, manufactured by him, is not a 'wholesaler' of liquors, within the popular or legal definition of that

word. The provision that 'no person paying a manufacturer's tax on brewed or malt liquors under this act shall be liable to pay a wholesale dealer's tax on the same,' neither enlarges nor restricts the right of the manufacturer to sell his product. The statute, without this language, would give him the same right of sale that he has with it, viz., the right to sell his product at his brewery. The manufacturer is entitled to keep his goods in store at the place of manufacture for the purposes of sale when receiving orders, and in so doing is not a 'wholesaler,' within the popular or legal definition of that word. 'Articles which the consumer recognizes as single the retailer keeps wrapped up in dozens, the wholesaler sends the gross, and the manufacturer supplies in packages.' 8 Cent. Dic. Enc., under definition of the word 'wholesaler.' "

It would seem, therefore, from the weight of authority, as well as from a reasonable and rational construction of our statute, that the brewing company is required to pay only the license of $500, which it has already paid. The judgment of the court, therefore, is that the defendant is not guilty.