**STATE et al. v. SAN PATRICIO CANNING CO., et al. (No. 8214.)**

Court of Civil Appeals of Texas. San Antonio. May 1, 1929.

Claude Pollard, Atty. Gen., and David J. Pickle and C. W. Trueheart, both of Austin, for appellants.

Boyle, Wheeler & Gresham, of San Antonio, for appellees.

SMITH, J. This action was brought by the Attorney General, in behalf of the state of Texas and its game, fish, and oyster commissioner, against certain individuals doing business under the trade-name of the San Patricio Canning Company, to recover an occupation, or license, tax, upon the theory that the defendant's operations bring it within the classification of a "wholesale dealer" in shrimp, and is therefore subject to the tax prescribed in chapter 178 of the Acts of the Regular Session of the Thirty-Ninth Legislature (22 Gam. Laws, 441), or, in the alternative, by article 936 of the Penal Code. The trial court rendered judgment refusing recovery to the state, which has appealed.

Appellee contested the state's claim for taxes upon the grounds that the act of the 39th Legislature is unconstitutional, and that appellee's business is not within the meaning of the term "wholesale dealers in shrimp," as defined and contemplated in art. 936 of the Penal Code, as follows: "A wholesale dealer, in the meaning and definition of this chapter, is any person, corporation or firm or partnership engaged in the business of buying and selling or handling for shipment, * * * shrimp, * * * in quantities of ten pounds or more to any customer during the same day, or whose daily sales, or whose sales for any one day, amount to more than the aggregate of one hundred pounds of above-mentioned marine products."

A determination of the constitutional questions raised is not deemed necessary to this decision, and therefore a discussion of them will be pretermitted.

The case was submitted upon agreed facts setting forth in detail the nature of the business conducted by appellee and here sought to be subjected to the tax demanded by the state. The operation of its business is thus described by appellee in its brief, based upon the agreed facts:

"In operating the cannery no shrimp are caught by its (appellee's) agents or employees, but all the shrimp used by it are bought from independent fishermen, who, through the medium of the San Patricio Canning Company, pay the tax provided for in article 937 of the Penal Code of one-fifth of 1 per cent. per pound on all the shrimp taken and sold or offered for sale.

"No fresh shrimp are sold by the San Patricio Canning Company, and its business consists entirely in canning shrimp in tin and glass containers and selling the products so prepared. The process employed is, briefly, as follows: The shrimp are delivered by boat to the cannery, being shoveled on a power conveyor, which places the shrimp in a mechanical washer. This is in form of an inclined cylinder, inside of which are nozzles which play streams of water on the shrimp as they slowly work their way down the inside of the revolving cylinder. This cylinder is perforated, which allows the sand and grit to pass out the sides of the cylinder. When the shrimp reach the lower end of the cylinder they are thoroughly cleaned and are dumped into baskets. The baskets are weighed, and the shrimp are then dumped into another conveyor, which delivers them in cold storage, where they are packed in crushed ice until next morning. The ice not only preserves the shrimp, but loosens the entire outside covering, consisting of shell, etc., so that it can readily be removed by hand. This operation is referred to as peeling, and takes off all of the outside of the shrimp, including the head, legs, shell, and tail. At this time all entrails are also removed. After this process there is nothing left but shrimp meat. The next step is to wash the meat through two waters, after which it is placed in tubs and salted. The meat then goes into vats, where it is cooked in boiling brine for eight minutes. This brings out the red color. The meat is then placed on another conveyor, on which it proceeds very slowly, and any pieces of shell, legs, or whiskers are picked out. This conveyor takes the meat to packing tables, where it is packed, part in cans and part in glass jars, from which tables conveyors take cans and jars to capping machines, which automatically cap and seal them. The cans and jars are then placed in process crates, which by means of a steam hoist are placed in retorts, where they get their final process consisting of 240° Fahrenheit for 10

minutes on tin and 18 minutes on glass. They are then labeled and placed in cases ready for shipment.

"Shrimp untreated and uniced will spoil in three or four hours. Iced shrimp are available for human consumption not over five or six days. By actual test shrimp canned in 1913 by the process mentioned is still edible.

"None of the product prepared in the manner before described is sold locally, but all of it is sold in shipments in quantities of 10 pounds or more to the same customer during the same day, the sales for certain days in the spring amounting to more than the aggregate of 100 pounds, said weights in all instances being exclusive of the tin or glass containers. The sales are all made through brokers, either to wholesale grocers or to large chain store operators, said chain store operators reselling the product both at wholesale and at retail. These wholesale grocers, and also these large chain store operators in so far as their resales are at wholesale, make a profit on their resale of the product to retail dealers."

The controlling point made by appellee is that it may not be classified, for the purpose of taxation, as a wholesale dealer in shrimp, "engaged in the business of buying and selling (or handling for shipment) * * * shrimp, * * *" in the quantities arbitrarily prescribed by the statute quoted above. We are of the opinion that appellee's business may not be included in that classification, for that purpose, within the meaning of the statutory definition.

It is true that appellee is a buyer of shrimp in small quantities from individual fishermen, and that the daily aggregate of such purchases amounts to wholesale quantities. To that extent its operations coincide with the definition in the statute of wholesale dealers in shrimp. But there that definition ceases to apply. For the purpose of this inquiry shrimp is a raw material, not to be resold in its original state, or in the form in which appellee purchases it, but to be definitely removed from the market as shrimp. It is, on the contrary, converted into another product of a substantially different form and condition before it is offered for sale. It is subjected to intricate and extensive processes of refinement, whereby it is transformed from an ugly, wriggling thing, subject to immediate and conclusively manifest decay at its demise, into a succulent edible which retains its savory state for many years thereafter. Shorn of its head, its tail, its legs, its shell, its hirsute appendages, emptied of its entrails, and deprived of its tremendous potential powers of offense against the olfactory senses of mankind, it is treated to chemical and other processes, by which its edible parts are steeped in preservatives and packed in secure tin and glass containers, in which refined and finished state it is distributed in

crates, by wholesale, as canned shrimp. Such a business is not that of a merchant, or of a dealer, in the sense in which those terms are ordinarily employed, but of a processer, a canner, a manufacturer of shrimp products, as clearly distinguished from that of a wholesale dealer engaged in the business of buying and selling shrimp. It is no more such dealer than one who operates a modern packing house plant is a wholesale dealer engaged in buying and selling pigs; than a fruit canner is a wholesale dealer engaged in the business of buying and selling peaches; than the owner of a breakfast food plant is a wholesale dealer engaged in the business of buying and selling corn, or oats, or rice; than an iron founder is a wholesale dealer engaged in the business of buying and selling iron ore. It is no more a wholesale dealer engaged in the business of buying and selling shrimp, in the common acceptation of those terms, than it is such dealer in the oils or other preparations in which the refined shrimp is preserved, or in the tin and glass containers in which the finished product is packed for preservation, or in the crates in which it is put upon the market. A "dealer" is "a person who makes a business of buying and selling goods, especially, as distinguished from a manufacturer, without altering their condition." Webster's Dict.; Egan v. State (Tex. Cr. App.) 68 S. W. 273; State v. Cody (Tex. Civ. App.) 120 S. W. 267; State v. Yearby, 82 N. C. 561, 33 Am. Rep. 694; Commonwealth v. Campbell, 33 Pa. 380; People v. Voorhis, 131 Mich. 398, 91 N. W. 624; Taylor v. Vincent, 12 Lea (Tenn.) 282, 47 Am. Rep. 338; Phillips v. Byers, 189 Cal. 665, 209 P. 557; In re Rheinstrom (D. C.) 207 F. 119; Central Trust Co. of Illinois v. Lueders (C. C. A.) 221 F. 829; In re Alaska American Fish Co. (D. C.) 162 F. 498; State v. Refining Co., 108 La. 603, 32 So. 965; Remy v. Healy, 161 Mich. 266, 126 N. W. 202, 29 L. R. A. (N. S.) 139, 21 Ann. Cas. 78.

The definition, given in the statute, of a "wholesale dealer in shrimp," as being one "engaged in the business of buying and selling shrimp" in the quantities specified, is in plain language, and when that language is given its ordinary meaning it does not include a canner of shrimp. "Dealers" and "canners" in the ordinary sense of the terms, are distinct classifications, as we have endeavored to point out, and it is only by doubtful implication, if at all, that either may be included in the other.

■■ The rule is that the courts may not extend or give special significance or an unnecessary or peculiar or strained construction to such plain terms as those employed in order to subject a particular commodity to a tax imposed by the government. The rule is, rather, that in the interpretation of statutes imposing taxes their provisions will not be extended by implication beyond the plain im-

port of the language used, nor will their operation be enlarged to apply to subjects not specifically included therein, and "in case of doubt they are construed most strongly against the government, and in favor of the citizen." 25 R. C. L. pp. 1092, 1093; 36 Cyc. p. 1189; 26 Am. & Eng. Encyc. Law (2d Ed.) 669; Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211; Underwood v. School Dist. (Tex. Civ. App.) 149 S. W. 773.

The inclusion in the statute of the phrase, "or handling for shipment," in the definition of those to be embraced in the taxed class, does not affect the questions decided, for by no reasonable rule of construction can that phrase be made to apply to appellee, whose business is that of a canner, or manufacturer, and not that of a transportation or storage agency.

It seems clear that under the rule stated the statutes in question cannot be construed to embrace appellee's business.

These conclusions settle the appeal, and the judgment is affirmed.