

# THE ATTORNEY GENERAL
## OF TEXAS

**GERALD C. MANN**
XXXXXXXXXXXXXXXXXXXXXX
**ATTORNEY GENERAL**

**AUSTIN 11, TEXAS**

Honorable Murrell Buckner, Chairman
Game, Fish & Oyster Commission
Austin, Texas

Dear Sir:

Opinion No. O-4414
Re: Under the facts presented should a
wholesale fish dealer's license be
required of the H. E. Butt Grocery
Company of Corpus Christi?

Upon certain facts presented to you by your Director of Coastal Operations, relating to operations of the H. E. Butt Grocery Company, we quote from your letter of February 11, 1942, requesting the opinion of this department:

"Mr. J. B. Arnold, director of coastal operations of this department, states:

"The H. E. Butt Grocery Company of Corpus Christi is the owner of several Piggly-Wiggly stores throughout the Southwest. . . The H. E. Butt Grocery Company makes shipments (of aquatic products) to the various Piggly-Wiggly stores over the Southwest, and the sale (of aquatic products) is made from the Piggly-Wiggly stores to the consumer, and it is on that point that I think under the law, since he buys for the purpose of shipments and sale and the shipment is made from the H. E. Butt Grocery Company of Corpus Christi by truck, that he (the H. E. Butt Grocery Company) is due to procure a license (a Wholesale Fish Dealer's License) for the H. E. Butt Grocery store.'

" . . .

"If the said H. E. Butt Company purchases aquatic products from fishermen or wholesale dealers and ships same to retail stores which they own and operate for the purpose of retail sale is the H. E. Butt Company required to purchase a Wholesale Fish Dealer's License before conducting such business?

"If the said H. E. Butt Company ships
aquatic products to stores which they own and
operate and such stores sell such aquatic pro-
ducts only to hotels, cafes or restaurants or
to consumers of such products is the said H. E.
Butt Company under this circumstance required
to purchase a Wholesale Fish Dealer's License
before engaging in such business?

"If the said H. E. Butt Company through
any of its stores sells aquatic products to any
bait dealer or other person who resells said
products would it be necessary to establish that
the said H. E. Butt Company sold such products
to dealers for the purpose of resale before the
said H. E. Butt Company could be successfully
prosecuted for conducting such business without
a Wholesale Fish Dealer's License?"

It is further stated in your letter that there ex-
ists evidence that one or more Piggly-Wiggly stores has
sold aquatic products to one or more hotels, cafes, or
restaurants and to at least one bait dealer and that shrimp
sold to the said bait dealer was purchased for purposes of
resale.

We have been informed that the name Piggly-Wiggly,
under which the H. E. Butt Company, a private corporation,
operates its stores, is a copyrighted name which that com-
pany has obtained the right to use. Such stores are not
separate entities, but all belong to and are operated by
that company. A sale made by any of these stores is a sale
by said company.

As will be seen from the provisions of the law here-
inafter quoted, a person or corporation is not required to
have a license both as a "Wholesale Fish Dealer" and "Retail
Fish Dealer" at any one of its places of business. In con-
sidering the company in question, the character of its oper-
ations at each business location determines the kind of
license at that location required under the Act.

Article 934a of Vernon's Penal Code of Texas, in
point, provides:

"Sec. 1. The following words, terms and
phrases used in this Act are hereby defined as
follows:

" . . . .

"(b) A 'Wholesale Fish Dealer' is any person engaged in the business of buying for the purpose of selling, canning, preserving or processing, or buying for the purpose of handling for shipments or sale, fish or oysters or shrimp or other commercial edible aquatic products, to Retail Fish Dealers, and/or to Hotels, Restaurants or Cafes and to the Consumer.

"(c) A 'Retail Fish Dealer' is any person engaged in the business of buying for the purpose of selling either fresh or frozen edible aquatic products to the consumer.

"(d) A 'Bait Dealer' is any person engaged in the business of selling either minnows, fish, shrimp or other aquatic products, for fish bait.

" . . . .

"(f) 'Person' shall include the plural as well as the singular, as the case demands, and shall include individuals, partnerships, associations, and corporations.

" . . . .

"Sec. 2. Before any person in this State shall engage in the business of a . . . "Wholesale Fish Dealer', 'Retail Fish Dealer', 'Bait Dealer', . . . the proper license provided for in this Act privileging them so to do shall first be procured by such person from the Game, Fish and Oyster Commission of Texas or from one of its authorized agents.

"Sec. 3. The licenses and the fees to be paid for the same are hereby provided for in this Act and are as follows:

" . . . .

"2. Wholesale Fish Dealers' License, fee for each place of business, Two Hundred Dollars ($200).

" . . . .

"3. (a) Retail Fish Dealers' License, fee Three Dollars ($3) for each place of business in

each city or town of less than seven thousand, five hundred (7,500) population.

"(b)  Retail Fish Dealers' License, fee Ten Dollars ($10) for each place of business in each city or town of not less than seven thousand, five hundred (7,500) and not more than forty thousand (40,000) population.

"(c)  Retail Fish Dealers' License, fee Fifteen Dollars ($15) for each place of business in each city or town of more than forty thousand (40,000) population.

"   . . . .

"11.  Place of business, as used in this Act, shall include the place where orders for aquatic products are received, or where aquatic products are sold, and if sold from a vehicle, the vehicle on which, or from which such aquatic products are sold, shall constitute a place of business . . .

"Sec. 6.  Any person failing to comply with or violating any provision of this Act shall be deemed guilty of a misdemeanor and upon conviction shall be punished by a fine in a sum not less than Ten Dollars ($10.00), nor more than Two Hundred Dollars ($200.00), and his license shall be automatically cancelled  and he shall not be entitled to receive another such license or permit for one year from the date of such conviction."

In the interpretation of statutes imposing taxes, provisions will not be extended by implication beyond the plain import of the language used, nor will their operations be enlarged to apply to subjects not specifically included therein.  In doubtful cases, taxing statutes are construed most strongly against the State and in favor of the citizen. State v. San Patricio Canning Co., 17 S. W. (2d) 160; 25 R. C. L. pp. 1092, 1093.

From the facts heretofore stated and, as furnished us by the Executive Secretary of the Game, Fish and Oyster Commission, all sales are made through the various Piggly-Wiggley stores, and for each store or "place of business" as that term is defined in Article 934a, the H. E. Butt Company has obtained a retail fish dealers' license.

In the case of Ex Parte Mehlmen, 75 S. W. (2d) 688, the Court of Criminal Appeals, upholding the constitutionality of the Act in question and construing the word "consumer" stated, and we quote from the opinion on page 690 as follows:

"It is clear from a reading of the definition of dealers that one who confines his business to selling to the consumer is required to pay the tax provided for retail dealers, . . . It is true that the wholesale dealer is permitted to sell to the consumer. . . It is argued, however, that the wholesale dealer is permitted to sell to hotels, restaurants and cafes, all of which are properly comprehended by the term 'consumer' as employed in the definition of 'retail dealer', and that therefore the dealer who desires to sell to hotels, etc., is unable to determine the sort of license he must secure. We perceive nothing in the definition of 'retail dealer' that should be taken to prohibit one operating under a retail dealer's license from selling to hotels, restaurants and cafes; they being comprehended by the term 'consumer' as that term is ordinarily understood. We, therefore, express the opinion that one desiring to sell to the consumer alone is apprised by the act that he is required to procure a retail dealer's license, and that thereunder he may sell to hotels, restaurants and cafes."

It seems clear under the foregoing authority that both wholesale and retail dealers are permitted to sell to hotels, restaurants and cafes. In connection with your first two questions and under the facts stated, their answer lies within the meaning of "Retail Fish Dealers" as used in Subsection (b) of Section 1, Article 934a, Penal Code defining a "Wholesale Fish Dealer". That phrase conclusively refers to and means retail dealers conducting their own place of business separate and apart in ownership from the place or places of business operated by the purchaser or shipper. For example, a retail dealer owning several stores does not become a wholesale dealer within the meaning of the Act although he apparently buys for the purpose of handling for shipments to his several stores for sale as a retail dealer. In this instance "shipments" for servicing the several retail places of business are necessarily incident to the servicing of his own retail stores. Under the Ex parte Mehlmen case cited, hotels, restaurants and cafes are comprehended by the term "consumer", hence such sales are within the definition of "Retail Fish Dealer." Under the facts

stated such "shipments" apparently comprehended by your first two questions do not require the H. E. Butt Company to have a "Wholesale Fish Dealers'" license at its Corpus Christi place of business.

Relative to your third question and under the facts, such sale is allegedly made to the "Bait Dealer," who pur-chased same for the purpose of resale. It is not alleged that the shrimp was sold for the purpose of resale. The point is that "Bait Dealer" as that term is defined, is not comprehended by the term "consumer" within the definitions of "Retail Fish Dealer" or "Wholesale Fish Dealer." A "Bait Dealer" is one engaged in the business of selling shrimp or other aquatic products, for fish bait. We may assume that any sale made to a licensed bait dealer is for purpose of resale. The mere fact, however, that a bait dealer is re-quired to obtain a license and is defined as a licensee en-gaged in the business of resale does not alone furnish evi-dence as to the character of the seller, whether wholesale or retail fish dealer. There is no prohibition in the Act against a licensed "Bait Dealer" buying from any of the licensees defined by the Act.

The statute defining the term "Wholesale Fish Dealer", requires a license as such of a corporation not only "engaged in the business" of buying for the purpose of selling, canning, preserving or processing, but also buying for the purpose of handling for "shipments or sales". The term "engaged in the business" does not mean the performance of a single or isolated business transaction but strongly suggests and car-ries the idea of conducting, prosecuting and continuing business by performing progressively such acts within the statutory definition. A retail fish dealer being permitted to buy for the purpose of selling fresh edible aquatic pro-ducts to the consumer, including hotels, restaurants and cafes, and a Bait Dealer permitted to buy for the purpose of resale for fish bait, the company's handling of edible aquatic pro-ducts, including shrimp, for such shipments together with the single transaction of a shipment or sale to a "Bait Dealer," or "Retail Fish Dealer" would be insufficient to constitute one a "Wholesale Fish Dealer" under the Act.

The foregoing construction of the statute is sustained by the following cases construing similar phrases contained in the Federal Tariff Act of 1909, par. 38, 36 Statutes 112; Lewellyn v. Pittsburg B. & L. E. R. Co., C. C.A. Pa., 222 F. 177, 185; Berliner Handels-Gesellschaft v. U. S. Ct. Cl., 30 Fed. Supp. 490, 496, citing U. S. V. Emery, Bird, Thayer Realty Co., 237 U. S. Reports, p. 28; Words and Phrases, Vol. 14, Perm. Ed., p. 624. It was further held in Strickler v.

Schaaf, 91 P. (2d) 1007, 199 Wash. 372, that an isolated or occasional transportation of persons does not constitute "engaging in business" within the statute defining "auto transportation company" as one "engaged in the business of transporting persons, and, or, property for compensation."

We do not, in this opinion go into the question of the proper license to be required of a dealer engaged in the business of buying for the purpose of selling or handling shipments only to hotels, restaurants or cafes within the popular and ordinary meaning of the word "wholesale" as distinguished from "retail". Admitting that both the wholesale dealer and the retail dealer are permitted to buy for the purpose of selling edible aquatic products to hotels, restaurants or cafes, it is apparent that a retail dealer's license does not permit one whose business is solely that of selling by the wholesale or in large quantities to hotels, restaurants and cafes, thus handling same for shipments to such consumers, to defeat the purpose and intent of the Act by extending his operations beyond those permitted under such retail fish dealers' license. The facts are insufficient on this point, however, as constituting the company a "Wholesale Fish Dealer" under the Act.

Answering your questions in the order in which same are presented, it is therefore the opinion of this department:

Question No. 1. That H. E. Butt Grocery Company is not required to purchase a Wholesale Fish Dealer's License where it purchases aquatic products from fishermen or wholesale dealers and ships same to retail stores which it owns and operates for the purpose of retail sale under a Retail Fish Dealer's License.

Question No. 2. H. E. Butt Grocery Company is not required to purchase a Wholesale Fish Dealer's License where it ships aquatic products to its various retail stores for sale as a Retail Fish Dealer under the facts submitted.

Question No. 3. It would be necessary to establish not only that H. E. Butt Grocery Company, through any one or more of its stores, sold aquatic products to more than one "Retail Fish Dealer" for the purpose of resale but that such operations constitute being "engaged in the business" of a "Wholesale Fish Dealer" before said company could be successfully prosecuted for conducting its business without a wholesale fish dealer's license.

Yours very truly

ATTORNEY GENERAL OF TEXAS


By s/Wm. J. R. King
    Wm. J. R. King
            Assistant

WJRK:LM:wc


APPROVED MAY 9, 1942
s/Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By s/BWB Chairman