WAKEMAN. In re.  See Case No. 17,051.

## Case No. 17,051.
### WAKEMAN v. HOYT.

[5 Law Rep. 309; 1 N. Y. Leg. Obs. 132.]

Circuit Court, D. Connecticut.  Sept. 24, 1841.

BANKRUPTCY — WHO ARE MERCHANTS — ACTS OF BANKRUPTCY—FRAUDULENT CONVEYANCES.

1. Any person engaged in business requiring the purchase of articles to be sold again, either in the same, or in an improved shape, must be regarded as "using the trade of merchandise," within the intent of the bankrupt law [of 1841 (5 Stat. 440)].

[Cited in Re Smith. Case No. 12,981.]
[Cited in Daniels v. Palmer, 35 Minn. 350, 29 N. W. 164.]

2. If a trader willingly procures himself to be arrested or his goods to be attached, it is an act of bankruptcy, although such attachment was not fraudulent on his part.

3. The term "fraudulent conveyance," as used in the bankrupt act, does not necessarily imply moral turpitude. but is satisfied with a fraud in law, counteracting the policy of the act, and preventing a general distribution of his property, among the creditors of a bankrupt.

4. A conveyance or assignment by a creditor of all his property to secure a preference to particular creditors, is of itself, a fraud upon the act of congress and an act of bankruptcy.

[Cited in Ashby v. Steere, Case No. 576; Gassett v. Morse, Id. 5,264.]

5. Where a debtor, being deeply embarrassed and pressed for security by a creditor, executed to certain family connections, mortgages and assignments of all his property, it was *held* to be an act of bankruptcy, although there was no evidence that the debtor had, at the time, any intention of applying for the benefit of the bankrupt act.

This was an application by [David Wakeman] the petitioning creditor for a decree of bankruptcy against Rufus Hoyt, a manufacturer and vender, at his establishment in Fairfield county, and elsewhere, of carriages, sleighs, and other vehicles. On the 15th of June, 1842, Hoyt being deeply embarrassed and pressed for security by the petitioning creditor; executed to certain family connections to whom he was indebted, mortgages and assignments of all his property, including the stock, tools, &c., in his

carriage establishment, for the purpose of securing to the mortgagees a preference over his general creditors. There was no evidence or pretence that at the time of making the mortgages on which the petitioning creditor relied as constituting acts of bankruptcy, Hoyt had any intention of applying for the benefit of the bankrupt act. The application was opposed on two grounds: (1) That Hoyt was not "a merchant or using the trade of merchandise, or a retailer of merchandise," within the meaning of the act; and (2) that the mortgages, &c., though made with the intent to secure a preference to particular creditors, were not fraudulent, and did not constitute acts of bankruptcy.

The case was argued before Judson, J., in the district court, on the 31st of August, by R. Booth and R. S. Baldwin, for the petitioning creditor, and by H. Dutton for Hoyt, and the two questions above stated were adjourned into the circuit court by the district judge, and were reargued on Thursday, the 23d inst. in that court, by R. S. Baldwin, for the petitioning creditor, and by R. I. Ingersoll, for the bankrupt.

THOMPSON, Circuit Justice, delivered the opinion of the court, in substance as follows: The first question presented for the opinion of the court is, whether this party is a trader or dealer in merchandise, within the meaning of the act of congress. We think the meaning to be attached to the words used, is, that when the party is engaged in a kind of business that necessarily requires the purchase of articles for the purpose of carrying on that business, he is a pe son "using the trade of merchandise" within the intention of the act. The great object is, to provide for cases where credit is required. The case of a handicraftsman whose business is confined to the produce of his own labor merely, is different. The words of the act are, "a merchant or using the trade of merchandise." If a person is engaged in a business requiring the purchase of articles to be sold again, either in the same, or in an improved state, he must be regarded as "using the trade of merchandise." This person was a carriage maker, carrying on an extensive business, in the manufacture and sale of carriages. These may be fairly considered as merchandise; and in the transaction of his business it was necessary for him to contract debts, and use credit. When a person sells the mere produce of his own labor, he is only a seller. His business requires no purchases, and he has no occasion for credit. But Mr. Hoyt, in the transaction of his business, was necessarily both a buyer and seller. We think, therefore, that he is liable to a decree of bankruptcy, if his conduct has been such as to subject him to it.

The next question is, whether he has committed an act of bankruptcy? In order to be so declared, he must be in one of the five predicaments specified in the act of congress. These are either (1) departing from the state, &c., with intent to defraud his creditors; (2) concealing himself to avoid being arrested; (3) willingly or fraudulently procuring himself to be arrested, or his goods and chattels, lands, &c., to be attached or taken in execution; (4) removing or concealing his goods, &c., to prevent their being levied upon; or (5) making any "fraudulent conveyance, assignment, sale, gift or other transfer of his lands, tenements, goods or chattels, credits or evidences of debt." In the case of an attachment in which the debtor willingly aids, it is not necessary that it should be fraudulent, in order to render it an act of bankruptcy. "Willingly or fraudulently" is the language of the act. The debt secured by the attachment or execution may be bona fide and justly due. Nevertheless, if the debtor being a merchant, &c., willingly procures himself to be attached, or his property to be taken in execution, it is an act of bankruptcy. What is there in such a transaction that partakes of fraud? Nothing, if it is an honest debt. All that the debtor does is to procure the execution to be levied on his goods, &c. Why is this an act of bankruptcy? It can be for this reason only, that he thereby does an act contrary to the policy of the bankrupt law. That policy is, in cases of hopeless insolvency, to cause an equal distribution of the trader's effects. It is on no other principle that it is made an act of bankruptcy, for a trader to aid a creditor in securing his debt, by attachment or execution. He gives thereby a preference to the creditor whom he so assists, over his general creditors. Then, if that be so, how does it differ from the act of bankruptcy last specified, in making a "fraudulent conveyance, assignment, &c." Does the word "fraudulent" there used, necessarily import moral turpitude? or may it be satisfied with a fraud in law, counteracting the policy of this act, and preventing a general distribution of his property among the creditors of the bankrupt, by applying it exclusively to the benefit of such of them as he may choose to prefer? Whether such preference is given to a single creditor, or to two or more, is wholly immaterial. It equally counteracts the policy of the law.

If we look to the second section, it appears to me that it serves to explain what shall be deemed the kind of fraud which may render a conveyance fraudulent, within the meaning of the first section. "All future payments, securities, conveyances, or transfers of property, or agreements made or given by any bankrupt, in contemplation of bankruptcy, and for the purpose of giving any creditor, indorser, surety, or other person, any preference or priority over the general creditors of such bankrupt, &c., shall be deemed utterly void, and a fraud upon this act." From the argument as to the meaning of the word "bankrupt" a little doubt was at first created in my mind whether this applied to involuntary bankrupts at all. But I do not think the word "bankrupt," as there used, can be confined to a person who has been declared a bankrupt. It means the same as if the word "person" had been used

instead of "bankrupt," so that it would read, "all future payments, securities, &c., made by any [person] in contemplation of bankruptcy and for the purpose of giving any creditor, &c., any preference, &c. The preference is made by a person in contemplation of bankruptcy, and not by a bankrupt after he has been declared such. And all such conveyances are declared to be "utterly void,'and a fraud upon this act." This must refer to the acts before specified as "acts of bankruptcy." Why is giving a preference to be considered a fraud on this act? Because the act contemplates an equal distribution. It is a fraud because it counteracts the policy of the law. Though it may not be fraudulent in a moral point of view, it must be fraudulent if it contravenes the policy of the law. So when the trader procures the levy of an execution on his property, it is favoring one creditor over the others. This would not be a fraud, if it were not for the bankrupt law. It is precisely as honest an act for the debtor to procure an attachment or execution, to be levied on his property by a creditor, as it is to secure to him a preference by means of a conveyance. It is fraudulent only because it counteracts the policy of the law; and this is equally true in the one case as in the other. I am, therefore, in this view of the case, of opinion, that a conveyance or assignment by a trader of all his property, to secure a preference to particular creditors, is, per se, a fraud upon the act of congress and an act of bankruptcy. When a part only of a trader's property has been paid or secured to a creditor, whether or not it shall be deemed an act of bankruptcy, will depend on the motive with which such payment or security was made, and the circumstances attending the transaction.

The circuit court therefore, advise that under the circumstances of this case, Rufus Hoyt has committed acts of bankruptcy, and ought to be declared a bankrupt by the district court.