[L. A. No. 6653. In Bank.—October 4, 1922.]

## WM. S. PHILLIPS, Appellant, v. JAMES C. BYERS, Sheriff, etc., Respondent.

[1] APPEAL—PREPARATION OF TRANSCRIPT—NOTICE TO CLERK—CONSTRUCTION OF CODE.—A transcript on an appeal from a judgment will not be disregarded and the appeal dismissed for the omission of the appellant to state in his notice to the clerk to prepare the transcript under section 953a of the Code of Civil Procedure that he desired or intended to appeal or that he had appealed from the judgment, since the requirement of the section to that effect must be regarded as merely directory, in view of the fact that the section does not purport to provide for a notice of appeal.

[2] SALES—MANUFACTURER—MERCHANT—MEANING OF TERMS.—One who simply manufactures an article and sells it is not a merchant, and although a manufacturer may also be a merchant if he buys and sells goods, he does not become one by disposing of the goods he has produced at a manufacturer's profit.

[3] ID.—CANNING CORPORATION—MANUFACTURER—MORTGAGE OF PRODUCTS.—A corporation which cans raw fruits and vegetables and sells its goods only to brokers, jobbers and wholesale grocers for the profit ordinarily made by the manufacturer, and which receives no other profits, is a manufacturer and not a merchant, and may give a valid chattel mortgage on its goods under section 2955 of the Civil Code.

[4] ID.—ATTACHMENT OF MORTGAGED PERSONAL PROPERTY—DUTY OF OFFICER.—An officer has no right to take mortgaged personal property under attachment or execution, unless he, as provided by section 2969 of the Civil Code, pays or tenders to the mortgagee the amount of the mortgage debt and interest, or deposits the amount thereof with the county clerk or treasurer to the mortgagee's order.

APPEAL from a judgment of the Superior Court of San Diego County. C. N. Andrews, Judge. Reversed.

The facts are stated in the opinion of the court.

William H. Wylie for Appellant.

William G. Mirow for Respondent.

2. Distinction between manufacturer and dealer in goods, note, 21 Ann. Cas. 78.

LAWLOR, J.—The plaintiff, Wm. S. Phillips, brought this action against the defendant, James C. Byers, sheriff of San Diego County, to recover damages for the alleged conversion by defendant of certain goods upon which the plaintiff claimed to hold a chattel mortgage. The goods consisted of 585 dozen cans of string beans and 32 dozen cans of catsup, the property of the Standard Canning Company, a corporation, whose business was the buying and canning of raw fruits and vegetables, and which company had canned the goods in question.

On August 1, 1919, the company gave to one A. S. Bridges a promissory note for $23,516.41 and to secure its payment executed a chattel mortgage on "All personal property of every kind owned by said mortgagor and on the premises in Block Nineteen . . . , among which are items as follows, to wit: All canned string beans; all canned tomatoes; all canned or bottled catsup; all vegetables and fruit in stock, or in process of being manufactured, canned or preserved; all wooden packing boxes; all lug boxed products; all time cards; all salt; all fuel oil; all silicate. . . .

"Also all canned products of every kind as they are produced upon said leased premises from time to time hereafter, the lien of this mortgage to attach to them as fast as the same are produced or manufactured, together with the cans and containers thereof." The mortgage was recorded on August 11, 1919, and on September 10, 1919, the note and mortgage were assigned to the plaintiff. Subsequently the mortgage was foreclosed and a deficiency judgment entered for $8,462.65.

In March, 1919, J. A. Williams, secretary of the company, had requested one I. Isaac Irwin to make a lease of certain farm lands to one Phillip Colburn, in order that Colburn might raise tomatoes thereon to be canned by the company. In payment of the rent for the land five notes, aggregating $1,500, signed by Colburn and indorsed by the company, were given. These notes were not paid, and on November 24, 1919, Irwin brought suit on them against Colburn and the company, and judgment in his favor was rendered and affirmed on appeal. (*Irwin* v. *Colburn*, 56 Cal. App. 41 [204 Pac. 551].) A writ of attachment was issued in the action on the same day, and by virtue thereof

the defendant, as sheriff of San Diego County, acting through a deputy, entered the premises of the company, took possession of the 585 dozen cans of string beans and the 32 dozen cans of catsup and removed them. Thereafter plaintiff began this action, alleging the execution and assignment of the note and mortgage, that the mortgage covered the property in question and that it had been unlawfully removed by the defendant and converted to his own use.

Defendant in his answer alleged the company was not a manufacturing corporation but was a corporation merchant, and that the goods attached were part of its stock in trade, which, by section 2955 of the Civil Code, it was forbidden to mortgage. That section provides: "Mortgages may be made upon all growing crops, including grapes and fruit, and upon any and all kinds of personal property, except the following: . . . 3. The stock in trade of a merchant." The court found in favor of the defendant and that as against Irwin the mortgage was void. From judgment entered pursuant thereto plaintiff takes this appeal.

[1] It is first necessary to consider respondent's contention that the transcript on appeal should be disregarded and the appeal dismissed for the reason that appellant, in his notice to the clerk to prepare the transcript on appeal under section 953a of the Code of Civil Procedure, did not state that he desired or intended to appeal or that he had appealed from the judgment, which statement is required by the section, and that at the time the notice was given there was no notice indicating that appellant contemplated appealing. This position is untenable. It was held in *Smith* v. *Jaccard,* 20 Cal. App. 287 [128 Pac. 1023, 1026], in which case a petition for a hearing by this court was denied, that section 953a of the Code of Civil Procedure does not provide for a notice of appeal; that none of the proceedings there prescribed is jurisdictional to the appeal, and that the provision requiring the reporter to file the transcript within twenty days after notice to prepare it is merely directory. As the section does not purport to provide for a notice of appeal, the requirement of a statement that the party has appealed or intends to appeal must be regarded as merely directory, and the absence of such a statement in the notice cannot affect the

regularity of the transcript, although the requirement that such a notice shall be filed is undoubtedly mandatory. (*Des Granges* v. *Des Granges,* 175 Cal. 67 [165 Pac. 13].) That there was no notice of appeal on file at the time the notice to prepare the transcript was filed is immaterial, for section 953a expressly provides that the party may state in such a notice that he "intends to appeal," and in such a case there would be no notice of appeal on file. Respondent insists he was entitled to know whether or not appellant intended to appeal, but section 953a does not provide for any notice to the opposite party; it deals entirely with notice to the clerk relative to the preparation of the transcript. The only notice of appeal appellant was required to give was that provided by section 941b of the Code of Civil Procedure.

[2] Appellant's first assignment of error is to the action of the court in finding that "said corporation was at all times . . . mentioned in the pleadings a merchant and was doing a merchandising business in the sale of its canned and preserved products"; that "said corporation maintained as a storeroom and place of business a certain room in the City of San Diego where its finished products were kept awaiting purchase by its customers"; that "on the first day of August, 1919, and for some time prior thereto, the said Standard Canning Company of San Diego had and kept in its said storeroom as a part of its stock in trade, 585 dozen No. 10 cans of string beans, which beans had been preserved and canned by said Standard Canning Company of San Diego, and also had in its said storeroom 32 dozen cans of catsup, which catsup had been preserved by said Standard Canning Company of San Diego and that said string beans and catsup were held by said corporation as a part of its stock in trade awaiting sale to its customers at such times as a price acceptable to said corporation might be offered therefor." It is insisted the company was a manufacturer and as such entitled to mortgage the manufactured goods in question.

The distinction between a manufacturer and a merchant is well recognized and the cases wherein they have been distinguished are numerous, but the tests applied to determine in which class particular persons or groups belong

have varied widely, depending in part on the purpose for which the classification was made in each instance.

In *Wakeman* v. *Hoyt,* 28 Fed. Cas. 1350 (No. 17,051), and *In re Eeles,* 8 Fed. Cas. 365 (No. 4302), it was held that, within the meaning of the bankruptcy act, anyone who bought goods and sold them, in the same or an improved state, "used the trade of merchandise," for the carrying on of his business required the extension of credit on an uncertain capital stock.

Respondent has cited a number of authorities from the courts of Missouri wherein it was held that one who kept on hand a stock of goods manufactured by him for sale in the course of trade was a merchant. But an examination of those cases shows they were decided under a statute requiring merchants to obtain a license, and defining a merchant to be "Every person, corporation or copartnership of persons who shall deal in the selling of goods . . . at any store, stand or place occupied for that purpose." (Rev. Stats. Mo. 1899, sec. 8540.) In *State* v. *Whittaker,* 33 Mo. 457, it was said: "We cannot go beyond the statute to find any other definition of a merchant." The effect of such a rule is to render one who manufactures upon order only a manufacturer, and one who manufactures goods for sale in the course of trade a merchant.

*Norris Bros.* v. *Commonwealth,* 27 Pa. St. 494, and *Commonwealth* v. *Campbell,* 33 Pa. St. 380, were decided under statutes taxing dealers in goods and expressly exempting manufacturers selling their own wares upon their own premises. These two cases held that certain manufacturers who so sold their products were not merchants.

*Union County Nat. Bank* v. *Ozan Lumber Co.,* 179 Fed. 710 [103 C. C. A. 584], held that a company which manufactured and delivered log rollers on order only was a manufacturer. The court considered the proposition that a manufacturer who deposits his goods "in his store or factory from which he sells them in the usual course of business would probably be a merchant or dealer . . . notwithstanding the fact that he manufactured the articles dealt in," but held such a rule inapplicable to the case there under consideration and did not approve of it as a general statement of the law.

In *Chattanooga Plow Co.* v. *Hays*, 125 Tenn. 123 [140 S. W. 1068], in which case "dealer" and "merchant" were used synonymously, it was said: "The most restricted definition that can be given to the term 'dealer' is one who takes profit in the distribution of goods and wares to the trade, in addition to the manufacturer's profit. A manufacturer is one engaged in making materials, raw or partly finished, into wares suitable for use. Anderson's Dictionary of Law; Webster. The marked distinction between a manufacturer and a merchant is that the merchant, or dealer, sells to earn a profit, and the manufacturer sells to take profit already earned. He must buy the materials out of which to make his finished product, and he must sell the product of his factory after it is finished. But such dealings are not his occupation. The one supplies him with materials with which to pursue it, while the other merely enables him to take the profit earned. . . .

"The complainant sells nothing except the product of its own factory, and does not sell that for a dealer's profit. Its only sales are to jobbers and commission men, and the only profit it takes is for manufacturing the article sold. While he deals, and is a dealer, its dealings are merely incidental to its occupation of manufacturer."

In *City of New Orleans* v. *Le Blanc*, 34 La. Ann. 596, it was said: "The defendants are either dealers or they are manufacturers. If they are not dealers, they are manufacturers. They may be both. A dealer is not one who buys to keep, or makes to sell, but one who buys to sell again. He stands between the producer and the consumer, and depends for his profit, not upon the labor which he bestows on his commodities, but upon the skill and foresight with which he watches the markets.

"A manufacturer is not one who creates out of nothing, for that surpasses human power; neither is he one who produces a new article out of materials entirely raw. He is one who gives new shapes, new qualities, new combinations to matter which has already gone through some artificial process. . . .

"In so far as they make barrels, hogsheads, and similar articles of wood, such as coopers make, the defendants must be considered as manufacturers, and as such, exempt from the license sought to be collected from them.

"But the case is different where they deal in articles of wood not manufactured by themselves; as when they buy and sell hoop poles."

In *Ong Chew Lung* v. *Burnett*, 232 Fed. 853 [147 C. C. A. 47], it was said: "If Ong Hung in 1903 was engaged solely in conducting a factory for the manufacture of materials furnished by others, he was not a merchant; but if, in addition to the work of a factory he bought and sold goods, he was a merchant." In *Egan* v. *State* (Tex. Cr.), 68 S. W. 273, it was held that one who manufactured ice and sold it was not a dealer.

The Standard Dictionary defines "merchant" as "A person who buys and sells commodities as a business and for profit; especially, one who has a place of sale and stock of goods; a trader." The same work defines "manufacturer" as "1. To make or fashion by working on or combining material, form or produce by some industrial process; fashion by hand or machinery . . . 2. To work or fashion by labor into useful or desirable forms; form or make into something." A merchant is distinguished from a dealer in that he must have a store, stand or other place to keep and sell his goods, while a dealer may buy and sell without such aids to his business. (*Kansas City* v. *Ferd Heim Brewing Co.,* 98 Mo. App. 590 [73 S. W. 302, 303].)

From the authorities above referred to it appears that in the absence of statutory regulation or special circumstances, the courts have given the ordinary meaning to the terms "merchant" and "manufacturer." It follows that one who simply manufactures an article and sells it is not a merchant and that although a manufacturer may also be a merchant if he buys and sells goods, he does not become one by disposing of the goods he has produced, at a manufacturer's profit. There is no statute in this state which defines the terms and in the absence of such provision they must be given their ordinary meaning. The legislature must have had in view the distinction between them when it inhibited the giving of chattel mortgages on the stock in trade of merchants only.

[3] In the case at bar there is no question but that the string beans and catsup which were attached were canned by the Standard Canning Company, and this constituted it a manufacturer. The evidence shows it sold both on

contract and on orders for goods which it had already canned. It also shows that goods were sold only to brokers, jobbers and wholesale grocers. There is no evidence that such goods were sold for any profit other than that ordinarily made by the manufacturer; that is, there were no sales at a figure which would give the company the profit ordinarily made on a purchase and sale by a middleman. The company did not act as its own broker or wholesaler and there was uncontradicted evidence that it did no retail business and bought no manufactured products for the purpose of making a profit on a resale. It received no profits other than those earned through canning vegetables.

Therefore, giving full weight to the testimony that the company sold its manufactured goods standing in the warehouse, as well as those manufactured to order, such a fact would not be sufficient to render the company a merchant. It follows the court erred in finding the company was a merchant and in holding the mortgage invalid under section 2955 of the Civil Code. This conclusion makes it unnecessary to consider the other points made by the parties concerning Irwin's right to be classed as a creditor of the company.

[4] It is not claimed the sheriff complied with the provisions of section 2969 of the Civil Code, which provides that before mortgaged property may be attached, the officer must pay or tender to the mortgagee the amount of the mortgage debt and interest, or must deposit such an amount with the county clerk or treasurer to the order of the mortgagee. In *Irwin* v. *McDowell*, 91 Cal. 119 [27 Pac. 601], it was said: "From these sections it clearly appears that an officer has no right to take mortgaged personal property under process against the mortgagor, unless he first complies with the requirements of section 2969; and if he does so, he makes himself liable as for a conversion."

Judgment reversed.

Waste, J., Richards, J., *pro tem.*, Lennon, J., and Wilbur, acting C. J., concurred.