## WOODRUFF v. LAUGHARN. *

### In re GOLDEN STATE GEM CO.

No. 6389.

Circuit Court of Appeals, Ninth Circuit.
June 1, 1931.

*Rehearing denied September 14, 1931.

J. A. ·Coleman and Ed Fitzpatrick, both of Los Angeles, Cal., for appellant.

Robert L. Beveridge, of Los Angeles, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and ST. SURE, District Judge.

WILBUR, Circuit Judge.

This action was brought by the trustee of the estate of the Golden State Gem Company, a corporation, bankrupt, to secure possession of certain property alleged to belong to the bankrupt but in the possession of the appellant, Leonard J. Woodruff, under claim of ownership, based upon a purchase by him of the property at an execution sale in pursuance of the foreclosure of a chattel mortgage executed by the bankrupt, as mortgagor, to the appellant as mortgagee. The trustee in bankruptcy by his action challenges the validity of the mortgage, the indebtedness purporting to be secured thereby, and the validity of the mortgage foreclosure and sale, upon the ground that the mortgage · was fraudulent and void as to creditors, and that the decree of foreclosure was procured by collusion between the bankrupt and the appellant. Although the trustee claimed in his petition that the indebtedness alleged to be secured by the chattel mortgage was fictitious, the evidence shows and the special master found as a fact that there was a bona fide indebtedness at the time of the execution of mortgage owing from the bankrupt to the appellant for $18,000. It appears that this indebtedness was at the time of the execution of the mortgage, on August 3, 1927, also secured by a pledge of precious and semiprecious stones in the safe deposit box in the Security First National Bank of Los Angeles of an aggregate value of $78,000, but the special master found as a fact that it was doubtful whether the stones so pledged would sell for enough to pay the total indebtedness due from the bankrupt to the appellant, aggregating $28,000.

The only evidence tending to support the charge of actual fraud in the execution of the chattel mortgage for the purpose of hindering and delaying creditors is the evidence which tends to indicate that the purpose of the mortgage was to prevent the creditors of the corporation from seizing the property pending the formation of a Nevada corporation and the issuance of a part of the stock thereof in payment of the indebtedness due the appellant. It appears that the appellant was pressing the bankrupt for further security in the form of a chattel mortgage, and as he was in a position to immediately enforce his claims against the bankrupt corporation, there was no actual fraud to be inferred from the mere execution of the chattel mortgage. The trustee's allegation of fraud was based largely upon the contention that there was no indebtedness due from the bankrupt to the appellant, and the charge of fraud in that regard fell when it was clearly shown that there was such bona fide indebtedness. The trustee in bankruptcy also counted upon the invalidity of the chattel mortgage upon the ground that it covered property not authorized to be hypothecated by a chattel mortgage, namely, "the stock in trade of a merchant," and therefore, under section 2955 of the Civil Code of California, the mortgage was void as to creditors. The trustee also contends that the mortgage is invalid under the terms of section 3440 of the Civil Code of California as amended in 1925. Cal. Stat. and Amendments 1925, p. 725. This statute provides that a mortgage of the fixtures or store equipment of a machinist or retail or wholesale merchant is conclusively presumed to be fraduluent and void against the existing creditors unless a notice of intention to execute the intended mortgage is filed in the office of the county recorder seven days before it is executed. No such notice was filed. The special master held that, as to part of the property mortgaged, the mortgage was void as to creditors on the ground that it was "stock in trade of a merchant" not authorized to be so hypothecated (section 2955, Cal. Civ. Code, supra); that as to part of the property the mortgage was void as to existing creditors under section 3440 of the Civil Code of . California, supra, on the ground that such property was furniture and fixtures or store equipment within the meaning of that section, and no notice of the intended mortgage was filed for record. As to the other property covered by the mortgage, the special master held that the mortgage was not authorized by the board of directors at a regular or special meeting, as required by the provisions of section 320a of the California Civil Code, which is as follows: "When all the directors of a corporation are present at any directors' meeting, however called or noticed, and sign a written consent thereto, on the record of such meeting, or if the majority of the directors are present, and if those not present sign in writing a waiver of notice of such meeting, whether prior to or after the holding of such

meeting, which said waiver shall be filed with the secretary of the corporation, the transactions of such meeting are as valid as if had at a meeting regularly called and noticed. 1929."

With reference to the alleged conspiracy between the parties to the foreclosure proceeding, it is admitted that the action was allowed to go by default, but the only effect of such default was to waive the remedies of the corporation and thus waive any defect in the execution of the mortgage. It is not claimed that there was any other defense which could have been successfully interposed by the bankrupt. The petition in bankruptcy was filed within four months after the decree of foreclosure of the chattel mortgage, and the execution sale was made within that period, so that the lien acquired by the judgment of foreclosure and the title acquired by the purchaser would be subordinate to the rights of the creditors, as to whom the mortgage was void. 11 USCA § 107, subd. f. That is, as to them, the lien declared in the decree of foreclosure would not relate back to the date of the chattel mortgage, but would have its inception at the time of the decree, which, so far as the existing creditors are concerned, had no more validity than an agreement of that date between the mortgagor and the mortgagee that the mortgagee should have a lien upon the personal property described in the mortgage. The mortgagee having purchased the mortgaged property, we may, in this proceeding, consider the question of the validity of the chattel mortgage as to existing creditors of the bankrupt, unembarrassed by the foreclosure and sale thereunder.

As to appellant's contention that the evidence shows that the bankrupt was a manufacturer and that the stock of such a manufacturer may be mortgaged notwithstanding it is held for purposes of sale, he cites a decision by the Supreme Court of California. Phillips v. Byers, 189 Cal. 665, 209 P. 557, 560. In that case the property involved consisted of 585 dozen cans of string beans and 32 dozen cans of catsup in the hands of the Standard Canning Company, whose business was buying and canning fruit and vegetables. The issue in that case was whether or not the canning company was a manufacturing corporation or a merchant. The trial court found that it was a merchant, and held the mortgage void. The Supreme Court reversed the case, stating:

"In the case at bar there is no question but that the string beans and catsup which were attached were canned by the Standard Canning Company, and this constituted it a manufacturer. The evidence shows it sold both on contract and on orders for goods which it had already canned. It also shows that goods were sold only to brokers, jobbers, and wholesale grocers. There is no evidence that such goods were sold for any profit other than that ordinarily made by the manufacturer; that is, there were no sales at a figure which would give the company the profit ordinarily made on a purchase and sale by a middleman. The company did not act as its own broker or wholesaler, and there was uncontradicted evidence that it did no retail business and bought no manufactured products for the purpose of making a profit on a resale. It received no profits other than those earned through canning vegetables.

"Therefore, giving full weight to the testimony that the company sold its manufactured goods standing in the warehouse, as well as those manufactured to order, such a fact would not be sufficient to render the company a merchant."

In the case at bar, the situation is entirely different. It appears clearly from the evidence without any dispute that the bankrupt had engaged in the wholesale and retail jewelry business, and that as an incident thereto it manufactured jewelry from stones and material purchased in the rough, and that it also sold such materials in the rough at wholesale or retail as occasion demanded. The special master did not specifically determine what portion of the property described in the mortgage was a "stock in trade of a merchant" nor what portion thereof constituted "furniture and fixtures" nor what property was neither the one nor the other, but he held the entire mortgage void as to existing creditors for the reasons hereinabove mentioned. Walter Calvin Smith, the president and general manager of the bankrupt corporation, testified that the property described in the first paragraph in the description of property of the chattel mortgage was used daily in the operation of cutting and manufacturing gems and jewelry, that this property cost in excess of $10,000 and was worth that amount as part of the going concern. It appears from this testimony, which is not disputed, and from the nature of the property itself, that this property was a proper subject for chattel mortgage as authorized by section 2955 of the Civil Code of California. It also appears that it was not fixtures or store equipment of machinists or retail or wholesale merchants within the meaning of section 3440 of the

Civil Code of California, supra, and that as to these machines used exclusively in the manufacturing department of the bankrupt the mortgage thereof created a lien thereon valid as against existing creditors. The items referred to are as follows: "18 electric motors, 1 large grinding head with bases, 5 polishing heads, 3 brilliant cutting machines, 9 brilliant cutting laps, 12 cabachon cutting wheels and buffs, 1 foot press, 1 screw press, 3 small lathes, 1 rolling mill, 2 blowers and furnaces, 3 drill presses (1 hand, 1 electric, 1 belt driven), 1 electric soldering machine, 4 gang brilliant cutting machines, 4 saw heads with pulleys, belts and shafting, 2 jewelers' benches, 1 metal cutter, 1 ring bender, 2 casting machines (shafting, pulleys, machinery part and tools)."

The same witness testified that the property described in the next paragraph of the mortgage was used to do merchandising with, wholesale and retail. This would bring the property within the statute prohibiting the mortgage of fixtures or store equipment of a retail or wholesale merchant without the recordation of a notice of intention to execute the mortgage seven days before its execution and justify the finding of the special master and its approval by the court. The mortgage of this property was void as to existing creditors. Section 3440, Cal. Civ. Code; Moore v. Bay (C. C. A.) 45 F.(2d) 449. With reference to the balance of the property, the witness testified:

"The rest of the list on the mortgage, starting out with 200 pounds petrified wood, ending with 375 carats sapphires, were specimens. Referring to the petrified wood, that was just a specimen, I imagine, of interest to tourists more than anything else. We keep it in the store for the purpose of selling them. A lot of these rough materials were used to cut and manufacture with, and the rest of them used for gems and jewelry and kept there for the purpose of cutting and polishing and selling.

"The Master: Well, * * * but what I want to know first is, can you designate what of that merchandise was kept in the store previously and what, if any of it, was there to be cut or polished or worked upon in any way in the factory.

"Even the rough material, I sold rough material in the rough as well as finished produce to lapidarists, collectors and private people who wanted the specimens of these stones. I sold it cut and unset to both private people and stores, both finished product and mounted. Both to stores and private people.

"Mr. Beveridge: Q. Just state how the corporation acquired the uncut gems and so-called rough merchandise. A. Well, they bought them from the different miners of this gem material. It was sold, as I said before, cut, uncut and mounted. Well, I sold good-sized quantities in the rough without any labor thereon. We got orders continually for different materials in the raw, every day the year around. I sold it to lapidarists. I sold it to collectors of these gem materials, I sold it to people who wanted souvenirs, stones to take east with them, tourists and like that. I would say, without going into it item for item, the value of all those articles the court referred to from the first article, 200 pounds of petrified wood down to the end, 375 carats cut sapphires, would be above $50,000. That might be a long ways off, but it is over that. I believe that is very conservative."

We deem it unnecessary to set forth a statement in detail of these various items estimated by Mr. Smith to be worth $50,000. Such description covers over two pages of the transcript. As to these items the evidence justifies and requires the conclusion that the mortgage was void as to existing creditors by reason of the fact that it was property not authorized to be mortgaged by the law of California, because it was "the stock in trade of a merchant." Section 2955, Cal. Civ. Code, supra. It follows that the special master was in error in holding the mortgage void as to the mechinery used in the manufacture of jewelry and hereinabove itemized, but that the conclusion of the master and of the trial court was correct as to the balance of the property. As to those items in the mortgage wherein the mortgage was void as to existing creditors, the foreclosure sale was void as to them. The appellant, as purchaser of the mortgaged property with knowledge of the rights of the creditor, is not entitled to possession of any of the mortgaged property other than that just mentioned, which he is entitled to retain as additional security for the indebtedness due him.

The decree is modified in conformity with this opinion as follows:

In the paragraph thereof declaring plaintiff to be the owner of all the property described in the chattel mortgage a proviso shall be inserted after the word "mortgage" excepting therefrom the machinery hereinbefore specifically itemized as included in the first paragraph of the list of property described in the mortgage.

The next paragraph of the decree in regard to the sale by the trustee in bankruptcy of the jewelry, precious and semiprecious stones located in the safety deposit box at the Security First National Bank of Los Angeles in the name of the appellant, Leonard Woodruff, the decree is so far modified that the aforementioned machinery be included in the proposed sale by the trustee, or, in default of a purchaser for the amount due to the appellant, be included in the property to be turned over to appellant to satisfy his debt.

The paragraph of the decree appointing E. E. Moss, Esq., as special master, and requiring a report to him of such sales, is modified so as to include a report upon sale of the pledged and mortgaged property.

The next paragraph is correspondingly modified.

As so modified, the decree is affirmed.